[Cite as *In re J.C.*, 2013-Ohio-1292.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

IN THE MATTER OF J.C., III　　　　　:　　**O P I N I O N**

　　　　　　　　　　　　　　　　　　　　　:　　**CASE NO. 2012-L-083**

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2012 DL 00367.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, state of Ohio).

*R. Paul LaPlante*, Lake County Public Defender, *Vanessa R. Clapp* and *Rebekah J. Kusar*, Assistant Public Defenders, 125 East Erie Street, Painesville, OH 44077 (For Appellant, J.C., III).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, J.C., III ("J.C."), appeals the judgment of the Lake County Court of Common Pleas, Juvenile Division, adjudicating him delinquent on two counts of inducing panic arising from his threats to shoot the students of his middle school with his gang. J.C. contends this adjudication is against the sufficiency of the evidence such that his motion for acquittal should have been granted. J.C. additionally argues this adjudication is against the manifest weight of the evidence. For the following reasons, the judgment is affirmed.

{¶2} J.C. was charged in a four-count amended indictment. On March 23, 2012, appellant was brought to trial on three counts of inducing panic in violation of R.C. 2917.31(A)(1) and (2): one second-degree felony charge, pursuant to R.C. 2917.31(C)(5), if committed by an adult (Count One); one first-degree misdemeanor charge, pursuant to R.C. 2917.31(C)(2), if committed by an adult (Count Two); and one fifth-degree felony charge, pursuant to R.C. 2917.31(C)(4)(a), if committed by an adult (Count Four). Count Three of the amended complaint, making false alarms, was bifurcated from the trial and subsequently dismissed by the state.

{¶3} At trial, the following facts were adduced through testimony. On Tuesday, February 28, 2012—one day after the highly-reported fatal shootings at nearby Chardon High School—J.C., a student at Perry Middle School, made numerous comments to several students on the school bus and at school indicating he was going to "shoot up the school" with his gang.

{¶4} Five classmates testified to the nature of these comments.

{¶5} Classmate One testified she had a conversation with J.C. on the bus en route to school. When Classmate One expressed disapproval of J.C.'s comment that the victims in Chardon "deserved to die," J.C. explained that he was in a gang with the then-alleged Chardon shooter and that they would come after her.

{¶6} Classmate Two testified to a conversation she had with J.C. while in their homeroom at the middle school. After J.C. informed her he was going to "shoot up the school," Classmate Two advised she would not joke about such a thing given the tragedy that had transpired the previous day. According to Classmate Two, J.C. stated he was not joking and he would return with his gang to shoot everyone in the school.

2

{¶7} Classmate Three testified he overheard J.C.'s comment in homeroom that he was going to "shoot up the place." Classmate Three explained he was going to inform his teacher, but saw that two other students were already reporting the comments.

{¶8} Classmate Four and Classmate Five both testified to hearing J.C. state, while in homeroom, that he and his gang were going to shoot up the school. Classmate Five also stated J.C. said the same in the hallway. Classmate Four did not inform the teacher but explained he determined the matter had already been reported.

{¶9} Principal Scott Hunt testified to receiving reports of the account and detailed the level of commotion that ensued. Principal Hunt explained that J.C. was brought into the office and dismissed from school. He also testified that additional security was brought into the school to quell concerns. He testified that the issue was uploaded to the school's online "portal" reporting system for parents as an avenue to inform them that the matter was being handled.

{¶10} Perry Village Police Chief Michael Shank testified to the concern throughout the community as a result of J.C.'s comments. Chief Shank detailed the increased security measures and also noted he became aware of at least one 9-1-1 call from a concerned parent.

{¶11} J.C's father and mother both testified that neither parent had a weapons permit nor did they keep weapons in their home. They also testified that, to their knowledge, J.C. was not in a gang nor did he own a gun.

{¶12} J.C. moved for acquittal, which was denied. The trial court found the two felony charges of inducing panic to be true and adjudicated J.C. a delinquent child. The

court dismissed the misdemeanor count of inducing panic. On April 9, 2012, the trial court issued its order of commitment, deeming the two charges allied offenses of similar import, placing J.C. on community control, and staying his detention sentence. It should be noted that, as the April 9, 2012 entry contemplated further action by setting a restitution hearing for a later date, it was not a final, appealable order. *See In re J.A.*, 4th Dist. No. 11CA27, 2012-Ohio-2184, ¶6. On June 19, 2012, the order became final when the trial court found restitution to be owed in the amount of $1,255.51, with J.C. paying $500 via participation in a work detail program. The state waived one-half of the remaining balance, and J.C.'s parents were ordered to split the remainder.

{¶13} J.C. timely appeals and asserts two assignments of error. J.C.'s first assignment of error states:

{¶14} "The trial court erred to the prejudice of the Delinquent Child-Appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A) in violation of his due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

{¶15} As an initial matter, J.C.'s convictions on the two charges were deemed allied offenses of similar import pursuant to R.C. 2941.25. As "a conviction consists of both verdict and sentence," and as the disposition entered on Count Four merged into Count One, our analysis focuses solely on Count One—the second-degree felony charge of inducing panic. *State v. McGuire*, 80 Ohio St.3d 390, 399 (1997); *see also State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶12.

{¶16} Crim.R. 29(A) requires the trial court to grant a motion for acquittal if the evidence is insufficient to sustain a conviction on the charged offenses. The test for

4

determining sufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Lee*, 11th Dist. No. 2010-L-084, 2011-Ohio-4697, ¶9.

{¶17} In this case, the state had the burden of proving that J.C. caused "serious public inconvenience or alarm" by initiating or circulating a report of an alleged or impending crime, knowing such warning is false; or by "threatening to commit any offense of violence"; or by "committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm." R.C. 2917.31(A)(1)-(A)(3). Pursuant to R.C. 2917.31(C)(5), if the public place is a school, inducing panic is a felony of the second degree if committed by an adult.

{¶18} J.C. does not dispute making numerous threats to commit violence against the school; instead, he maintains there is insufficient evidence to demonstrate these threats caused serious public inconvenience or alarm. In support, J.C. points to examples of inducing panic included in the statute's 1974 legislative comments such as making a false bomb threat in an airport causing canceled or delayed flights, or deceptively causing a meeting to be cancelled for fear of the safety of those attending. J.C. argues these examples, though non-exhaustive, nonetheless illustrate that the "serious public inconvenience or alarm" envisioned by the statute is far more extensive

than anything supported by the evidence in this case, especially when the school was not evacuated or shut down.

{¶19} To clarify, J.C.'s reliance on the fact that the school was not evacuated or shut down to support his argument of insufficient evidence is misplaced. Pursuant to R.C. 2917.31(A), a conviction for inducing panic requires the perpetrator to cause an evacuation *or* "*otherwise* cause serious public inconvenience or alarm"; that is, the absence of an evacuation does not negate a finding of serious public inconvenience or alarm under the statute. (Emphasis added.)

{¶20} Neither the statute nor its legislative notes define serious public inconvenience or alarm. The legislative notes simply explain that "the section is designed primarily to avoid the harm which may result from panic." However, case law provides instruction concerning what is required to satisfy this element. For instance, in *State v. Walters*, 2d Dist. No. 22801, 2009-Ohio-2076, ¶23, neighbors' curiosity as to police presence in a nearby private residence did *not* constitute serious public inconvenience or alarm. In *State v. Campbell*, 195 Ohio App.3d 9, 2011-Ohio-3458, syllabus (1st Dist.), although eight police officers were required to respond to a domestic dispute when the defendant refused to open the door to his apartment, there was no evidence the other tenants in the building were stirred, and the police officers could not be inconvenienced as they were acting in their official capacity. Conversely, in *State v. Dulaney*, 180 Ohio App.3d 626, 2009-Ohio-79, ¶22 (3d Dist.), a disgruntled former employee phoned his former company threatening to beat up two employees. The appellate court affirmed that there was serious public inconvenience or alarm: the doors were locked, the police were called, and many of the employees were fearful as a

6

result of the threat. *Id.* at ¶24. These cases demonstrate that mere public awareness of an event is not sufficient to satisfy the element of serious public inconvenience or alarm; there must be some type of disruption, discomfort, distress, or fear caused by one or more of the three predicate actions found in R.C. 2917.31(A)(1)–(A)(3).

{¶21} Turning to the facts of this case, the evidence adduced at trial indicates the school's preexisting sense of unease from the Chardon tragedy was heightened by threats that similar violence could occur. Each student who testified indicated J.C.'s threats of violence scared them to differing degrees, and they reported the incident or told their parents. Principal Hunt explained that the students were concerned as reports of J.C.'s comments continued to flood the office. Principal Hunt confirmed that those students to whom he directly spoke expressed both fear and alarm given the threatening nature of J.C.'s comments and the serious manner in which they were delivered. There was also concern shared by staff members as reports of the comments circulated. Parents, who were made aware of the situation via the school's online "portal" reporting system, made phones calls to the office asking if it was safe for their children to be at school. Though the school has two security officers on staff, extra police presence was required to quell concerns as a direct result of the comments.

{¶22} As to Count Four, the fifth-degree felony charge, J.C. argues the state was unable to prove economic harm. However, as noted above, the finding of true with regard to this count was merged into Count One. As a result, there was no disposition imposed under Count Four, and any error with regard to the finding of true is not relevant because it has been merged with the second-degree felony charge. However, we note that the trial court's journal entry in this regard is somewhat unclear. It is the

7

province of the prosecution to elect which offense should merge with an allied offense. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669. That may have occurred in this case at the disposition hearing; however, the transcript of that hearing is not part of the record on this appeal. Although it would be appropriate for the trial court entry to reflect that is what occurred, we will presume the regularity of the proceedings.

{¶23} We conclude, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that J.C.'s threats to commit an offense of violence, i.e., to "shoot up" his middle school, caused serious public inconvenience and alarm.

{¶24} Accordingly, J.C.'s first assignment of error is without merit.

{¶25} J.C.'s second assignment of error states:

{¶26} "The trial court erred to the prejudice of the Delinquent Child-Appellant when it returned a finding of 'True' against the manifest weight of the evidence."

{¶27} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

8

{¶28} J.C. contends the evidence demonstrates the panic in the school was not exclusively caused by his comments; instead, he notes there was still commotion due to the school shootings in Chardon—located in a neighboring county—from the previous day. He also notes the evidence indicated there was another issue involving electronic postings from two other students the following day that caused concern. However, Chief Shank testified to receiving calls from concerned parents specifically about J.C.'s comments, noting that while everybody was already in a "heightened state" due to the Chardon shootings, this matter made it worse.

{¶29} Moreover, R.C. 2917.31 "does not limit the offense of Inducing Panic to situations in which a single factor is the cause of the panic or alarm." *In re McCoy*, 138 Ohio App.3d 774, 779 (2d Dist.2000). In the analogous *In re McCoy*, a juvenile appealed her adjudication as a delinquent for inducing panic arising from threats of violence she made against her school shortly after the Columbine School shootings. *Id.* at 774. She argued she was not the sole cause of the panic and alarm which disrupted the school. *Id.* The Second Appellate District affirmed the judgment of the trial court, noting that while there were indeed several factors that contributed to the air of panic at the school, the juvenile could not "escape the fact that the record in this case affirmatively shows that her statement was a *significant contributing factor* to the panic and alarm[.]" *Id.* at 779. (Emphasis added.) The Second District also noted the "states of alarm and panic among students might be expected to arise with even less provocation, following a highly-reported tragedy like that at Columbine." *Id.* Similarly here, appellant cannot escape the facts in the record which illustrate his statements caused much of the ensuing panic, inconvenience, and alarm. Further, it is difficult to

9

envision a scenario whereby threats of deadly violence against a school, especially immediately following the events in Chardon, would *not* result in the kind of inconvenience and alarm contemplated by the statute.

{¶30} Accordingly, there is no manifest miscarriage of justice. J.C.'s second assignment of error is without merit.

{¶31} The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.