[Cite as *State v. Arnold*, 2022-Ohio-3147.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210541 |
| | | TRIAL NO. 21CRB-16057 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| HASSAN ARNOLD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 9, 2022

*Andrew W. Garth,* City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Tyler Liston*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Defendant-appellant Hassan Arnold appeals his conviction for telecommunications harassment in violation of R.C. 2917.21(B)(1), arguing that his conviction was against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

## Procedural and Factual History

{¶2} On September 6, 2021, Arnold was charged with making a telecommunication with the purpose to threaten Meredith Gibson in violation of R.C. 2917.21(B), a misdemeanor of the first degree. The case proceeded to a bench trial, where the state presented the testimony of Meredith Gibson, Nikia Bowman, and Officer Bittinger.

{¶3} Gibson testified that she had two children with Arnold, but they were no longer in a relationship. On September 6, 2021, she had a phone conversation with Arnold while she was at her sister's house. During the first conversation, Arnold asked if he could pick up their son. She told him she had plans that day, but that he could have their son the next day. He called her right back and asked about taking their son with him to a shelter. She said Arnold wanted to use their son to help him get into a shelter. She told him no. She testified, "And then, from there, he got mad." She said the calls started getting really adamant and Arnold told her that he was going to "beat [her] ass" every time he saw her and make her life a "living f-ing hell" if she did not bring their son outside. He also threatened to burn her sister's house down. He kept calling her. She guessed that Arnold made "at least" 25 calls over a period of an hour, around ten of which she answered. Arnold was parked outside her sister's house. Her sister was in the room with her the entire time.

**{¶4}** Bowman, Gibson's sister, testified that she was sitting with Gibson in the living room when Arnold called. Gibson's phone was on speaker phone. Arnold was saying that he was going to set the house on fire and telling Gibson that he was going to "wait her out" and beat her up if she did not bring their son outside. He also said he was going to make Gibson's life a living hell if Gibson did not allow him to use their son to get into a shelter. She estimated that Arnold called around 40 times within 20 minutes. Gibson answered some of the calls, but not all of them.

**{¶5}** Officer Bittinger testified that Arnold was sitting in a vehicle one house over from Gibson's sister's house when he arrived. After detaining Arnold, he spoke to Gibson who told him that Arnold continued to her call multiple times and was threatening over the phone to cause her physical harm. He said that Gibson appeared frustrated and frightened.

**{¶6}** The trial court found Arnold guilty. In announcing its decision, the trial court expressly found both Gibson and Bowman to be credible witnesses, and found that, while there was no dispute that the original purpose for the calls was either visitation with the child or to use the child to get into a shelter, Arnold became upset when he did not get what he wanted and "decided to continue calling and escalate the calls into threats." The trial court sentenced Arnold to 180 days in jail, suspended 150 days, credited 24 days for time served, and placed Arnold on one year of community control, which included a stay-away order from Gibson and her sister. The court further ordered that parental exchanges should take place only through an order of the court.

### Law and Analysis

**{¶7}** In a sole assignment of error, Arnold challenges the weight of the evidence supporting his conviction. In reviewing a challenge to the weight of the

evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

{¶8} Pursuant to R.C. 2917.21(B)(1), "No person shall make * * * a telecommunication * * * with purpose to abuse, threaten, or harass another person." "The Ohio Supreme Court has defined 'threat' as representing 'a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own conduct.' " *State v. Ham*, 1st Dist. Hamilton No. C-180338, 2019-Ohio-3468, ¶ 11, quoting *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 39. "The inquiry is not whether the recipient of the communication was in fact threatened, * * * but rather, whether the purpose of the person who made the communication was to threaten the person called." *Id.* at ¶ 10, citing *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 15.

{¶9} Conduct rises to the level of criminal harassment under this section of the statute if the accused " 'intended to alarm or to cause substantial emotional distress to the recipient, not just to annoy [the recipient].' " *Powell* at ¶ 17, quoting *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 14 (1st Dist.). "Evidence of the defendant's intent to harass may be direct or indirect." *Id.* at ¶ 18, citing *State v. Harshbarger*, 3d Dist. Auglaize No. 2-09-19, 2010-Ohio-4413, ¶ 19. "In the absence of direct evidence, a defendant's purpose to threaten, harass, or abuse may be established by the facts and circumstances surrounding the communication." *Id.*, citing *In re C.W.*, 1st Dist. Hamilton Nos. C-180677 and C-180690, 2019-Ohio-5262,

¶ 14. "R.C. 2917.21(B) does not require more than a single communication." *Id*. at ¶ 19, citing *In re C.W.* at ¶ 13. However, "the fact that a defendant sent numerous communications is often indicative of the defendant's specific purpose to harass." *Id.*, citing *Harshbarger* at ¶ 19, and *City of Hamilton v. Combs*, 2019-Ohio-190, 131 N.E.3d 297, ¶ 23 (12th Dist.).

{**¶10**} Arnold argues that the weight of the evidence did not show that his purpose for the calls was to abuse, threaten, or harass Gibson and implies that the weight of the evidence actually showed that his purpose was to retrieve his son from Gibson. In doing so, he argues that the record does not credibly support that his purpose shifted from benign to malevolent. However, both Gibson and Bowman testified that, after Gibson refused to give him their son, Arnold threatened, via phone, to cause physical harm to Gipson, to make Gibson's life a living hell, and to burn Bowman's house down if Gibson did not bring their son to him. "[I]t is well settled law that matters as to the credibility of the witnesses are for the trier of fact to resolve." *Ham* at ¶ 13. The trial court found both Gipson and Bowman to be credible.

{**¶11**} While Arnold's sole purpose for the initial call may have been to retrieve his son, the evidence showed that his purpose changed to threatening or harassing Gibson into changing her mind once she refused to give him their son. *See State v. Dulaney*, 180 Ohio App.3d 626, 2009-Ohio-79, 906 N.E.2d 1147 (3d Dist.) (affirming a conviction for telecommunications harassment where, although an ex-employee initially called the employer to discuss issues with his paycheck and insurance, he ultimately threatened to "kick their ass."). There was no evidence which weighed heavily against such a finding. Therefore, we hold that Arnold's conviction was not against the manifest weight of the evidence and affirm the judgment of the trial court. The sole assignment of error is overruled.

## Conclusion

{¶12} Having considered and overruled the sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.