# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

IN THE MATTER OF:

D.W. A DELINQUENT CHILD.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 JE 0023**

---

Juvenile Appeal from the
Court of Common Pleas-Juvenile Division
of Jefferson County, Ohio
Case No. 2023 DL 00079

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed and Vacated.

---

*Atty. Jane M. Hanlin*, Prosecutor, and *George M. Sarap*, Assistant Prosecuting Attorney, for Appellee and

*Atty. Costa D. Mastros*, for Appellant.

Dated: July 2, 2024

**Robb, P.J.**

{¶1} Appellant, D.W., appeals the judgment adjudicating him delinquent and finding him guilty if he were an adult of one count of inducing panic. Appellant argues that his adjudication is not supported by sufficient evidence. For the following reasons, we reverse and vacate the trial court's decision.

<u>Statement of the Facts and Case</u>

{¶2} Appellant was placed in detention in April of 2023. In May of 2023, a complaint was issued alleging Appellant committed two counts of inducing panic. Count one alleged that D.W. caused the evacuation, serious public inconvenience or alarm by initiating or circulating a report or warning of an alleged or impending fire, explosion, crime or other catastrophe, in violation of R.C. 2917.31(A)(1) and (C)(2), if he were an adult. Count one arose from writings D.W. made in a notebook, which he dropped in a classroom in February of 2023.

{¶3} Count two alleged D.W. caused the evacuation of a public place or otherwise caused public inconvenience or alarm by threatening to commit an offense of violence in violation of R.C. 2917.31(A)(2) and (C)(2), if he were an adult. Count two was based on an email that D.W. sent to the school's entire student body in April of 2023 stating "YOU SHOULD KILL YOURSELF … NOW!"

{¶4} After the exchange of discovery, the case was set for an adjudicatory hearing, which was conducted on two separate dates. The state presented four witnesses: Wintersville Police Department Patrolman Eric Hashbarger; school Resource Officer Roger Caldwell; school Superintendent Lorrie Jarrett; and Wintersville Police Captain Jason Fabian. The defense presented the testimony of two individuals, Jarrett and Geron Dison, the school's information technology director and technology teacher.

{¶5} Patrolman Hashbarger was sent to the Jefferson County Christian School on April 24, 2023 in response to a call from the school superintendent. Jarrett informed Hashbarger they had a student who had sent a concerning email and written a threat to burn down the school in a notebook. The juvenile sent an email to the whole student body saying they should all kill themselves. Jarrett seized the notebook from the child on

February 23, 2023, two months before she called the police.  Jarrett informed Hashbarger that the juvenile had already been suspended as a result of the notebook.

{¶6}  The first page of the notebook states:  "This book I made is for secret messages and doodling.  By that I mean communicating when we aren't allowed to talk, also secret messages.  We'll probably never use this.  If somebody takes this without permission, we'll slap them."

{¶7}  Hashbarger agreed that several individuals wrote in the notebook and that it also contained generally silly statements, including, "I feel like a hotdog" and "dolphins are actual psychopaths."  The concerning entry in the notebook states:  "The school is a mediocre establishment.  I am so close to burning this place to the ground.  * * * I have matches, I have lighters, I have fuel I could * * * lace every room with and destroy everything."  (Sept. 25, 2023, Tr. 21.)

{¶8}  There was no police involvement, and the school did not contact the authorities or the police regarding the juvenile until April 23, 2023 after he sent the email.  The email contained a meme consisting of an image of a man with his eyes whited out and surrounded by lightning bolts, which states "YOU SHOULD KILL YOURSELF … NOW!"  The email is dated Friday, April 21, 2023, and it was sent from D.W.s' school email account at 1:48 p.m. to "all students."  (State's Exhibit Two.)

{¶9}  In response to the call, Hashbarger went to the juvenile's home, spoke with his parents, and took him into custody.  This occurred on the Monday after the email was sent.  (Sept. 25, 2023, Tr. 33-37.)

{¶10}  Caldwell, the resource officer, testified that he was not involved with the notebook incident in February of 2023.  Caldwell's first involvement was also in April of 2023 after D.W. sent the email.  Caldwell felt the email was alarming and it needed to be turned into law enforcement.  He learned about the email about three days after it was sent.  Caldwell acknowledged the school continued as normal on the day of the email.  There was no lockdown or evacuation.  (Sept. 25, 2023, Tr. 50-56.)

{¶11}  Regarding the notebook, Superintendent Jarrett testified that she was approached by a staff member, who was also the mother of a student, about a notebook her daughter had found.  The mother reported to Jarrett that her daughter and her friend

were "upset" after they read D.W.'s notebook. "They were particularly concerned about one page." (Sept. 25, 2023, Tr. 60-64.)

**{¶12}** Jarrett called D.W. into her office and asked to see the notebook. D.W. handed it to her. She also met with D.W. and his father and suspended him for three days. This was in February.

**{¶13}** Two months later, Jarrett was approached by a student about an email he received from D.W. It was sent to all students from D.W.'s school email account. Jarrett said she found the email in addition to the notebook alarming. She later said that the notebook by itself alarmed her and then the email alarmed her as well. (Sept. 25, 2023, Tr. 65-70, 73.)

**{¶14}** On cross-examination, Jarrett agreed that three female students read the notebook after finding it on a classroom floor. They gave the notebook back to D.W. A few days later, one of the girl's mothers told Jarrett about the notebook, which prompted Jarrett to meet with D.W. He was 12 years old and in seventh grade at the time. (Sept. 25, 2023, Tr. 75-78.)

**{¶15}** D.W. told Jarrett that five different boys had written in the notebook. D.W. admitted that he wrote the page that had concerned her about burning the school, so she did not contact the other boys. D.W. told Jarrett how he was upset about being accused of stealing food a month before. Jarrett agreed she did not evacuate the school, employ any safety protocols, or issue any emails in response to the notebook incident. (Sept. 25, 2023, Tr. 84-87.)

**{¶16}** Regarding the email, one student told Jarrett in person about the email and another student forwarded it to her. She contacted the school IT director and instructed him to "take down" the email. (Sept. 25, 2023, Tr. 91.) D.W. told Jarrett the email was only supposed to go to his friends, but he hit "send all" by mistake. He also told her the email was a joke. The email was sent on a Friday afternoon, and she did not contact the police until the following Monday. The email did not cause the school to close early. Jarrett did, however, issue a school-wide email from the administration advising school families that an inappropriate email had been sent and that the administration was addressing the issue. (Sept. 25, 2023, Tr. 92-100.)

**{¶17}** Captain Fabian testified that the police were first contacted in April of 2023 and during that meeting, they learned about D.W.'s notebook incident as well. Fabian agreed that the notebook was not circulated to the whole school. (October 25, 2023 Tr. 119-136.)

**{¶18}** When he was asked to identify the serious public inconvenience or public alarm, Fabian said the school had to hold a board meeting regarding the student's expulsion, and Jarrett had to phone the police to address the situation. He agreed police were not called in February of 2023 regarding the notebook. Fabian also said he had no personal knowledge as to whether the notebook caused public inconvenience or alarm. No student or parent reported the notebook to the police. (October 25, 2023 Tr. 119-129.)

**{¶19}** The school IT Director Dison testified for the defense. Dison said he was approached by two students who were concerned about D.W.'s email. He quarantined the email. He and Jarrett pulled D.W. from class on the day the email was sent. Dison also recalled that the elementary students were nervous about the email. (October 25, 2023 Tr. 139-147.)

**{¶20}** Superintendent Jarrett testified again. She said that after suspending D.W. in February for the notebook incident, she agreed the matter was over. (October 25, 2023 Tr. 156.)

**{¶21}** Jarrett also confirmed that D.W. sent the concerning email to the student body on a Friday afternoon, and she did not contact the police department until the following Monday at the urging of a school board member. (October 25, 2023 Tr. 153-163.)

**{¶22}** In closing, the defense urged the court to dismiss the charges. The defense argued there was no evidence showing D.W. caused serious public inconvenience or alarm.

**{¶23}** The juvenile court found him guilty of count one concerning the notebook, but not guilty of count two arising from the email, and deemed D.W. a delinquent child. (November 22, 2023 Judgment.) D.W. was ordered to serve 30 days probation and eight hours community service. He was also directed to attend school daily and timely. (December 5, 2023 Judgment.)

<u>Assignment of Error</u>

**{¶24}** Appellant's sole assigned error asserts:

"The trial court erred in finding the juvenile guilty of inducing panic where the conviction was based on insufficient evidence."

**{¶25}** D.W. generally claims the facts in his case do not comport with the purpose of the inducing panic statute, which was intended to avoid the harm resulting from public panic. Additionally, D.W. contends three elements of the state's case and his conviction were not established by sufficient evidence. For the following reasons, we agree in part.

**{¶26}** D.W. contends there was insufficient evidence demonstrating he caused "serious public inconvenience or alarm." Next, D.W. asserts there was no evidence showing he initiated or circulated a report or warning of an alleged or impending fire. Last, D.W. claims the facts in evidence do not establish he circulated the warning "knowing that the threat or warning" was false.

**{¶27}** Whether evidence is legally sufficient to sustain a verdict is a question of law, which appellate courts review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3. A challenge on sufficiency grounds involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring).

**{¶28}** On appeal, we determine whether the evidence presented, viewed in a light most favorable to the prosecution, allows a rational trier of fact to find the essential elements of the crime established beyond a reasonable doubt. *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, *reconsideration denied sub nom. State v. Walker*, 160 Ohio St.3d 1517, 2020-Ohio-6946, 159 N.E.3d 1179. We must view the evidence and all reasonable inferences in favor of the state. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998).

**{¶29}** Chapter 2917 encompasses offenses against the public peace. The applicable version of the inducing panic statute R.C. 2917.31, effective until October 2, 2023, states in part:

(A) No person shall cause the evacuation of any public place, or *otherwise cause serious public inconvenience or alarm*, by doing any of the following:

<u>Case No. 23 JE 0023</u>

(1) *Initiating or circulating a report or warning of an alleged or impending fire*, explosion, crime, or other catastrophe, *knowing that such report or warning is false*;

* * *

(C)(1) Whoever violates this section is guilty of inducing panic.

(Emphasis added.)

**{¶30}** As for D.W.'s arguments that the state failed to come forward with evidence showing he initiated or circulated a report or warning of an alleged or impending fire, and that he did so "knowing that the threat or warning" was false, we disagree.

**{¶31}** When reading and applying statutes, courts must apply the statutory language as written. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

**{¶32}** "To construe or interpret what is already plain is not interpretation" and is not our function when a writing is unambiguous. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994), quoting *Iddings v. Bd. of Edn. of Jefferson Cty. School Dist.*, 155 Ohio St. 287, 290, 98 N.E.2d 827 (1951) (addressing statutory construction). Absent an ambiguity, courts must apply a statute "as written and conduct no further investigation." *State v. Hurd*, 89 Ohio St.3d 616, 2000-Ohio-2, 734 N.E.2d 365, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584, 651 N.E.2d 995 (1995) (addressing statutory language).

**{¶33}** "Initiating" is the present participle of the verb initiate. "Initiate" means "to cause the beginning of (something): to start or begin (something)." https://www.britannica.com/dictionary/initate (accessed April 3, 2024). "Circulating" is the present participle of the verb circulate. "Circulate" in this context means "to cause (something) to go or spread from one person or place to another. * * * He is circulating a petition asking for a new election." https://www.britannica.com/dictionary/circulate (accessed April 3, 2024).

{¶34} Based on the facts in evidence here, we conclude that D.W.'s act of dropping his notebook, either intentionally or unintentionally, caused the notebook to be circulated. This act initiated its circulation, and as such, we find this element was satisfied.

{¶35} There is no question the notebook was circulated and that it contained a potential threat or warning of a possible fire. D.W. admitted to writing the entry that stated: "I am so close to burning this place to the ground. * * * I have matches, I have lighters, I have fuel I could * * * lace every room with and destroy everything."

{¶36} It is undisputed that the notebook contained a threat of burning down the school and was circulated to three classmates, one parent, and the school superintendent. To the extent D.W. claims the girls who returned the notebook to him were "poking fun" at him about it, this fact is not in evidence. Instead, the superintendent was asked a question in this regard by defense counsel, but she denied knowing the girls were making fun of him. (Tr. 78.)

{¶37} However, it can be reasonably inferred that D.W. did not intend to burn down the school since he reportedly told the superintendent he was just venting about being accused of stealing food. Further, there was no emergency response or school-wide response in February of 2023 tending to show the administration found the threat credible. There was sufficient evidence showing D.W. made the statement knowing the threat or warning was false; this aspect of his argument is also meritless.

{¶38} Notwithstanding, there was no evidence showing D.W.'s act of dropping his notebook resulted in "serious public inconvenience or alarm."

{¶39} The phrase "serious public inconvenience or alarm" is not statutorily defined. However, the purpose of the law is to avoid harm that might result from panic. *State v. Dulaney,* 180 Ohio App.3d 626, 2009-Ohio-79, 906 N.E.2d 1147, ¶ 21 (3d Dist.), citing 1973 Committee Comment to H.B. 511. "[U]nder the committee's comments, the statute was not intended to cover only the ultimately serious threat of a bomb on an airplane. The committee's comments state that canceling a meeting for fear of the safety of those attending would equally be sufficient grounds to give rise to an inducing-panic conviction." *Id.* at ¶ 21.

{¶40} At least two Ohio appellate districts have held: "mere public awareness of an event is not sufficient to satisfy the element of serious public inconvenience or alarm;

there must be some type of [public] disruption, discomfort, distress, or fear * * *." *State v. Croghan*, 2019-Ohio-3970, 133 N.E.3d 631, ¶ 22 (9th Dist.), quoting *In re J.C.*, 11th Dist. Lake No. 2012-L-083, 2013-Ohio-1292, ¶ 20.

**{¶41}** Since the phrase "serious public inconvenience or alarm" is undefined, we assess the individual meanings of the words to reach a collective meaning. "Serious" is defined as "having an important or dangerous possible result." https://www.britannica.com/dictionary/serious (accessed April 3, 2024).

**{¶42}** "Public" in this context means "of, relating to, or affecting all or most of the people of a country, state, etc. * * * The ads are intended to increase public awareness of the risks of smoking." and "able to be seen or heard by many people  This will be her first public performance in five years.  * * * a public apology * * *." https://www.britannica.com/dictionary/public (accessed April 3, 2024.)

**{¶43}** "Inconvenience" is a noun and is defined as "trouble or problems * * * Bridge repairs cannot be done without some inconvenience to the public." https://www.britannica.com/dictionary/inconvenience (accessed April 3, 2024).

**{¶44}** Here, the notebook incident involved D.W., the superintendent, three other students/classmates, and one mother. The notebook incident did not affect or relate to all or most of the student body or staff. The public aspect of the offense was not established by record evidence.

**{¶45}** Furthermore, it is undisputed that the school was not evacuated and school officials did not undertake any other protocols, such as locking down the school or emailing parents to alert them about the contents of the notebook. The police were not contacted, and the school resource officer was not involved until two months later after the email was sent. There was no interruption of classes and no mention of school-wide fear or alarm. Thus, we conclude there was no *serious public* inconvenience or alarm.

**{¶46}** Although the superintendent may have been inconvenienced and the three students may have been inconvenienced and concerned, there was nothing showing "serious *public* inconvenience or alarm." The writings in the notebook did not result in any school lockdown and did not trigger other safety procedures or protocols. D.W.'s parents were contacted, and he was suspended from school for three days. The police

were not contacted, and the school resource officer was not involved until two months later.  There was no school-wide email or phone call after the notebook incident.

**{¶47}**  Unlike the instant case, in *Matter of C.I.R.*, 12th Dist. No. CA2018-06-123, 2019-Ohio-335, 129 N.E.3d 916, ¶ 5, the principal in that case testified there was a "palpable sense of fear in the school."  Further, a student testified he skipped school out of fear that C.I.R. would "shoot up the school."  In addition, two to three additional police officers were stationed at the school in the days following the student's social media post. *Id.*

**{¶48}**  In *State v. Ruetz*, 6th Dist. No. WM-22-001, 2023-Ohio-398, 208 N.E.3d 390, there was sufficient evidence showing the defendant caused "serious public inconvenience or alarm."  There, Ruetz admitted to attempting a public suicide at the hands of police with a desire to make headlines, and his conduct resulted in a large, public response.  *Id.* at ¶ 68.

**{¶49}**  In *State v. Dulaney, supra*, there was sufficient evidence of public inconvenience when a disgruntled employee called his former company with threats of harm to two employees.  Company officials locked the doors to the building, called the police, and many employees were in fear as a result of the threat.  *Id.* at ¶ 24.

**{¶50}**  However, in *State v. Kristofferson,* 1st Dist. Hamilton No. C-010322, 2002 WL 252427 (Feb. 22, 2002), the First District Court of Appeals held the state failed to present sufficient evidence showing "serious *public* inconvenience or alarm."  In *Kristofferson*, the defendant threatened to commit suicide in his own home.  The police responded and took him into custody after approximately eight minutes.  *Id.* at *1.  The defendant did not attack or threaten police.  The court concluded the inconvenience to on-duty police officers was not the "public inconvenience" contemplated by the statute since the officers responded to the residence as required by their official duties.  *Id.* at *2.

**{¶51}**  There must be not only public awareness of an event or threat, but also some type of public disruption, discomfort, distress, or fear caused by it.  *In re J.C.*, 11th Dist. Lake No. 2012-L-083, 2013-Ohio-1292, ¶ 20.  Here, there was no public awareness of the notebook, and as such, there could be no public disruption, discomfort, distress, or fear caused by the writings in D.W.'s notebook.  Although the email was circulated to the

entire student body and arguably could have caused a "serious public inconvenience," the evidence does not show the same is true for the notebook.

{¶52} Based on the evidence here, we conclude that D.W.'s act of dropping his notebook did not result in it being seen or heard by many people. There was no testimony that anyone other than the three students, one administrator, and one parent learned about it. There was also nothing showing public fear, discomfort, or other public inconvenience resulted. Although the five individuals were presumably inconvenienced and/or alarmed, there was no evidence showing "*serious public* inconvenience or alarm."

{¶53} Thus, D.W.'s sole assignment of error has merit.

Conclusion

{¶54} In light of the foregoing, D.W.'s delinquency determination is not supported by sufficient evidence. We reverse and vacate the trial court's decision.

Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that D.W.'s delinquency determination is not supported by sufficient evidence. The judgment of the Court of Common Pleas of Jefferson County, Ohio, is reversed. We vacate the trial court's decision according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**