[Cite as *In re L.W.*, 2015-Ohio-267.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF L.W. | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. CT2014-0033 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Muskingum County
Court of Common Pleas, Juvenile Division,
Case No. 21320659

JUDGMENT:                              Affirmed

DATE OF JUDGMENT ENTRY:       January 20, 2015

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

D. MICHAEL MADDOX                    JOHN WEAVER
MOLLY MARTIN                               542 S. Drexel Avenue
27 North Fifth St.                             Bexley, OH 43209
Zanesville, OH 43702

*Gwin, P.J.*

{¶1} Defendant-appellant L.W., a juvenile, appeals the judgment of the Muskingum County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child by reason of having committed the offense of inducing panic in violation of R.C. 2917.31(A)(1), a felony of the second degree if committed by an adult.

*Facts and Procedural History*

{¶2} On November 21, 2013, Detective Matt Wilhite of the Muskingum County Sheriff's Office filed a complaint alleging that L.W. was a delinquent child pursuant to R.C. 2151.02 due to committing the offense of Inducing Panic in violation of R.C. 2917.31(A)(1).

{¶3} The Maysville Middle and High Schools are located in separate sides of the same building in Muskingum County, Ohio. The schools had two bomb scare threats or incidents early in the school year. Accordingly, the schools set up heightened surveillance measures, which included having the custodial staff check nightly for any new graffiti and promptly removing innocuous graffiti. The schools further requested all teachers and other school personnel do a check for any new graffiti or threats in the restrooms of the school whenever in the area.

{¶4} The state's witnesses were Ric Roush, Director of Safety for the Maysville School District; LaVinda Bobst, Head Custodian for the Maysville Middle and High Schools; Annal Lee Baker, custodian at the Maysville Middle School; Zachary Goldsmith, Intervention Specialist (teacher) at the Maysville Middle School; Ryan Paisley, Muskingum County Sheriffs' Deputy, canine unit; Brandon Hoagland, Nathan Hina, Gage Dillon, Quentin Hicks, and Keaton Hina, students at the Maysville Middle

School; and Matt Wilhite, Muskingum County Sheriffs' Detective Deputy. Testimony was also presented from Fred Curry, Muskingum County Sheriffs' Detective Deputy. The State and the defendant juvenile stipulated to the admissibility of electronic video recordings of the second floor hallway of the Maysville Middle School on October 24, 2013, marked as State's Exhibits 11 and 12, which were shown on a large screen TV in the courtroom and referred to repeatedly and extensively during the hearing.

{¶5} On October 24, 2013, during the early morning hours, custodian Lee Baker was on duty and cleaned the second floor boy's restroom at the Maysville Middle School. As a part of her duties, she did do a careful check for any new graffiti or threats and found none.

{¶6} At 8:05 a.m., at the start of "Block One" or regular classroom instruction, Intervention Specialist Zachary Goldsmith did a check of the second floor boy's restroom at the Maysville Middle School and discovered the phrase "I have a bomb!" written on a grout line on the wall behind the commode in the first or rightmost stall of three stalls in that restroom. He notified the principal. The school was immediately put into a "soft lockdown," whereby students were to report immediately to their classrooms and stay in the classrooms. The soft lockdown lasted approximately ten minutes before the decision was made by Safety Director Ric Roush to evacuate the entire school building. Both the Middle School and High School were evacuated, the Sheriff's Office and the fire department were called to the scene, and the canine bomb-sniffing dog unit of the Sheriff's Office did a search of the entire building, resulting in a two-hour delay for both schools.

{¶7}   A video camera is in place outside the bathroom in question that records everyone going into and leaving the bathroom. Detective Matt Wilhite of the Muskingum County Sheriff's Office, testified that between the hours of 2:00 a.m. and 8:10 a.m., the video shows six boys going into and leaving the bathroom where the threat was found. The first boy entered the bathroom at 7:43 a.m. The last boy that left the bathroom before Mr. Goldsmith saw the threat was L.W. All six boys were interviewed by Muskingum County Sheriffs' Detective Deputies and gave statements to the detectives that same day, October 24, 2013.

{¶8}   The first boy that entered the restroom was Branden Hoagland. Branden entered at 7:43 am. Detective Wilhite eliminated Branden as a suspect as Branden used the third of the three stalls and was witnessed by another student Nathan Hine. Detective Wilhite believed that Branden's statement to the detectives was consistent with the video evidence.

{¶9}   Nathan Hine was eliminated as a suspect as he only used the sink, and was only in the bathroom a brief amount of time.

{¶10}  Gage Dillon testified he used the first stall, the one where the threat was found, but that he did not see the threat. He was consistent in his statement to the detectives, and was cooperative.

{¶11}  Quentin Hicks was eliminated as a suspect as he was in the bathroom a short amount of time and stated he did not see any paper or anything on the wall that was a threat.

{¶12}  The fifth and sixth boys that enter the bathroom are Keaton Hina and L.W. The two boys, Keaton Hina and L.W. can be seen going into the restroom together.

L.W. remained out of sight of the camera, while Keaton went in and out of camera view several times before leaving the restroom by himself about thirty seconds before L.W. left the restroom. These actions were not consistent with what Keaton and Logan told the detectives on October 24, 2013.

{¶13} When interviewed, Keaton Hina initially told Detective Wilhite that there were several other people in the bathroom with him and L.W. and that he only saw L.W. go to the urinal and then he walked out. Keaton said nothing about L.W.'s making an admission. After having time to watch the video in its entirety, and realizing that there was no one else in the bathroom besides Keaton and L.W., Detective Wilhite re-interviewed Keaton on October 25, 2013. Keaton appeared scared, and was concerned that his friend L.W. would get into trouble. Keaton then told Detective Wilhite, "We, we, me and [L.W.] were walking to second period and then and (inaudible) second period we were walking into the bathroom and then he went to the urinal and then I, I stood behind him and then he went to the stall and then I walked out a couple minutes later he walked out." (T. at 136). Keaton Hina testified L.W. went into the first stall. Keaton testified he originally told a story to Detective Wilhite because he did not want L.W. to get into trouble.

{¶14} Keaton further testified that he told the detective that, after school resumed after the evacuation and the two-hour delay, that L.W. told Keaton that he knew Keaton had seen him go into the stall and that he (L.W.) was the one who did the bomb threat. A video camera is also in place the hallway of the middle school second floor. The video tape shows a few seconds where L.W. and Keaton are talking before being joined by another student, Damien Lambert, the time being 11:38 a.m.

{¶15} Detective Wilhite testified that L.W. also gave him a statement on October 24, 2013,

> He gave me a statement that there were several individuals. He had walked in the bathroom at first he believed with Keaton Hine, Damien Lambert and himself. He then remembered that Damien did not walk into the bathroom with him. Started telling me about certain individuals, a kid that he did not recognize but had some kind of goggle type glasses on had walked into the bathroom. And this kid had stood directly behind him in the urinal. Had also talked about another individual that he kind of described going to a sink and things of that nature within the bathroom along with Keaton. Stated that Keaton was in the bathroom standing at a, in line at a urinal as well.

T. at 183. On re-questioning and confrontation by Detective Wilhite on October 25, 2013 that the videotape did not corroborate his statement to the detective on October 24, 2013, L.W. told the detective that he could not remember, blaming his medication or lack thereof, and continued denying any wrongdoing. When confronted about Keaton saying that L.W. admitted to Keaton that he did the bomb threat, he told Detective Wilhite that he never saw Keaton in the hallway at the relevant time. When confronted with the hallway videotape showing that he spoke to Keaton, L.W. maintained that that the pair only discussed what the detectives had said to them.

{¶16} L.W. did not testify at the hearing of this matter.

{¶17} At the conclusion of the contested hearing on March 27, 2014, L.W. was adjudicated to be a delinquent child as charged. L.W. requested specific findings of fact

and conclusions of law on March 31, 2014. Those findings were issued on April 1, 2014. The Magistrate's findings and conclusions were adopted and an Entry finding L.W. to be delinquent as charged was entered on April 1, 2014.

{¶18} L.W.'s objections were filed on May 16, 2014. On June 10, 2014, the Trial Court overruled L.W.'s objections and confirmed the April 1, 2014 findings of fact and conclusions of law.

{¶19} A dispositional hearing was held on June 17, 2014. L.W. was placed on probation, ordered to pay costs, receive a mental health assessment and follow the recommendations of that assessment, and ordered to write a letter of apology pending the results of the instant appeal. The dispositional Entry was filed on June 17, 2014.

*Assignment of Error*

{¶20} L.W. raises one assignment of error,

{¶21} "I. THE TRIAL COURT ERRED BY IN ADOPTING THE MAGISTRATE'S CONCLUSION OF LAW THAT L.W. WAS A DELINQUENT CHILD WHEN THAT CONCLUSION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

*Analysis*

{¶22} When considering whether a juvenile's adjudication is against the manifest weight of the evidence, this court applies the same standard of review as that applied in an adult criminal context. *In re N.Z.*, 11th Dist. Lake Nos. 2010–L–023, 2010–L–035, 2010–L–041, 2011–Ohio–6845, ¶ 78; *In re J.F.*, 9th Dist. Summit No. 24490, 2009-Ohio-1867, ¶12; *In re M.P.*, 8th Dist Cuyahoga No. 93152, 2010 -Ohio- 2216, ¶22.

{¶23} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶24}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶25}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely

substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶26}** There is no dispute in the case at bar that a statement was found on the restroom wall. L.W. argues that, 1). The evidence failed to prove beyond a reasonable doubt that L.W. wrote the statement on the wall; 2). The evidence failed to show that L.W. knew the report was false and 3). The evidence failed to prove that L.W. circulated a report of an impending fire, explosion, crime or other catastrophe.

**{¶27}** R.C. 2917.31 Inducing Panic, provides,

(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:

(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;

(2) Threatening to commit any offense of violence;

(3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.

## A. Identity.

{¶28} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168,

555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶29}** In the case at bar, the trial court viewed the videotape of the six individual boys who had entered the restroom immediately prior to the discovery of the writing on the restroom wall. The court further heard testimony from five of those individuals. The five boys testified about what they did in the bathroom, which stall, if any they were in, and identified themselves and others on the video. Keaton Hina testifed that L.W. admitted to him that he, L.W., had written the bomb threat on the restroom wall. A review of the videotape indicated a time when this conversation occurred in corroboration with Hina's testimony.

**{¶30}** L.W.'s statements to the police were patently false in light of what was depicted on the video tapes admitted into evidence.

**B. False threat.**

**{¶31}** L.W. next argues that the statement "I have a bomb!" is not "a report of an impending fire, explosion, crime or other catastrophe" as required by R.C. 2917.31(A)(1). Further, he maintains that the evidence fails to establish that L.W. knew the report was false.

**{¶32}** In *State v. Dulaney*, our brethren from the Third District observed,

> Under the 1973 Committee Comment to H.B. 511, which amended
>
> R.C. 2917.31, the overall goal of the offense "inducing panic" was stated
>
> as follows:

"The gist of an offense under this section is causing a public place to be evacuated or otherwise causing serious public inconvenience or alarm, and the section is designed primarily to avoid the harm which may result from panic. For example, a false bomb threat which causes airport officials to have the terminal cleared or passengers disembarked from a plane, or which delays scheduled flights, all while a search for the non-existent bomb is undertaken, is a violation under the section. Other examples of violations include deceptively causing a meeting to be cancelled for fear of the safety of those attending, or engaging in a free-for-all fight in a bar which causes the customers to scurry for the exits."

Thus, under the committee's comments, the statute was not intended to cover only the ultimately serious threat of a bomb on an airplane. The committee's comments state that cancelling a meeting for fear of the safety of those attending would equally be sufficient grounds to give rise to an inducing-panic conviction.

180 Ohio App.3d 626, 2009-Ohio-79, 906 N.E.2d 1147(3rd Dist.), ¶21.

**{¶33}** In the case at bar, the evidence in the record supports the trial court's finding that the phrase, "I have a bomb!" was meant to convey a threat, which caused both schools to be evacuated and searched for an explosive device. As no device was found, L.W. knew the report was false.

*Conclusion*

**{¶34}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that

L.W. was the person who had written the words on the restroom wall. We hold, therefore, that the state met its burden of production regarding the identity of L.W. and each element of the crime of inducing panic and, accordingly, there was sufficient evidence to submit the charge to the trial judge as the trier of fact and to support L.W.'s adjudication.

{¶35} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exists two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶36} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶37} The trial judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [trier

of fact] may take note of the inconsistencies and resolve or discount them accordingly such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [trier of fact] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶38} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

A fundamental premise of our criminal trial system is that "the [trier of fact] is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the "part of every case [that] belongs to the [trier of fact], who [is] presumed to be fitted for it by [his] natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶39}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The court neither lost its way nor created a miscarriage of justice in adjudicating L.W. delinquent.

**{¶40}** Based upon the foregoing and the entire record in this matter, we find L.W.'s adjudication was not against the sufficiency or the manifest weight of the evidence. To the contrary, the magistrate and the judge appear to have fairly and impartially decided the matters before them. The trial court as the trier of fact can reach different conclusions concerning the credibility of the testimony of the witnesses. This court will not disturb the trier of facts finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The trial court heard the witnesses, evaluated the evidence, and was convinced of L.W.'s guilt.

**{¶41}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

**{¶42}** L.W.'s sole assignment of error is overruled.

{¶43} For the foregoing reasons, the judgment of the Muskingum County Court of Common Pleas, Juvenile Division, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Baldwin, J., concur